**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**SCHAPIRO & WHITEHOUSE, INC., Respondent.**

**No. 9906.**

United States Court of Appeals Fourth Circuit.

Argued Oct. 4, 1965.

Decided Nov. 3, 1965.

Nancy M. Sherman, Attorney, N. L. R. B. (Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, and Wayne S. Bishop, Attorney, N. L. R. B., on brief), for petitioner.

Marvin C. Wahl, Baltimore, Md. (Blanche G. Wahl, and Wahl & Wahl, Baltimore, Md., on brief), for respondent.

Before BOREMAN and BRYAN, Circuit Judges, and MARTIN, Chief District Judge.

ALBERT V. BRYAN, Circuit Judge:

The National Labor Relations Board found that Schapiro & Whitehouse, Inc. had unwarrantedly refused to bargain with the union certified by the Board as its employees' representative,[1] and ordered the employer to desist from further refusal. 148 NLRB No. 102 (September 11, 1964); National Labor Relations Act § 8(a) (5) and (1), 29 U.S.C. § 158(a) (5) and (1). Answering the present petition of the Board to enforce its decision, the employer denied the union's representation of the employees, arguing that the election of the union was invalid. §§ 10(e) and 9(d) of the Act, 29 U.S.C. §§ 160(e) and 159(d).

No final decision can be made of the election contest, we think, until the Board has counted three ballots which it has found free of challenge but has never opened. We shall stay further proceedings here until these votes have been canvassed.

A consent election was conducted by the Board on August 30, 1963 upon a written stipulation between the company and the union approved by the Board. Among other things the stipulation required the parties to submit to the Regional Director lists of the employees eligible and ineligible to vote. Also, it prescribed as the unit to participate in the election all production and maintenance employees. Before the polling began on election day, the requisite lists were delivered to the union representa-

---

1. The Warehouse, Retail & Mail Order Employees, Local Union No. 590, International Brotherhood of Teamsters, Chauf- feurs, Warehousemen & Helpers of America.

tive, examined by him and endorsed with his signature as "inspected". They were then filed with the Board agent. The count of the ballots after the election showed 89 ballots for the union, 85 against it, and 7 challenged.

The employer disputed the election upon the Regional Director's rulings, all afterwards adopted by the Board, in (1) sustaining the union's challenges to the "Finkelstein" ballot and the "erasure" ballot, and (2) holding harmless campaign leaflets circulated by the union among the employees, almost all of whom are Negroes, assertedly containing an appeal to race for their support. The Finkelstein ballot was rejected because the Board found him not within the stipulated electorate, the erasure ballot because the Board found its marking so ambiguous as to void it.

Of the 7 challenges, 6 were by the union and 1 by the company. One of the union's 6 was upheld by agreement, and the employer's challenge was upheld by the Board. This left 5 challenges—all union—to be resolved. Of these, 3 were overruled, 2 sustained. These latter 2 are the Finkelstein and erasure ballots. The 3 which were overruled have never been opened.

As is evident, if 1 of the unopened ballots is in favor of the union, it would have a majority, no matter what the outcome of the Finkelstein and erasure challenges and the other two unopened ballots. Thus if only 1 is a "Yes" vote, the questions arising on the Finkelstein and erasure ballots would be purely academic, for the union would win, at the least, by 90 to 89. Plainly, then, it would be inadvisable for us to undertake a determination of these challenges until the 3 still sealed ballots are revealed.

Of course, we should not pass upon the propriety of the campaign leaflets until the tally of the votes is complete and the union has established a majority. Should the 3 unopened ballots be against the union, as is suspected, and should this court refuse to uphold the Board on either the Finkelstein or erasure ballot, the union has failed to establish a majority and the point about the leaflets becomes moot.

We will request the Board to unseal and count the undisclosed 3 ballots, in the manner in which its regulations provide for the opening of ballots, and report the results to this court. Meanwhile the case will be held in abeyance on our docket.

Order in accordance with opinion.